## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Darius Hakeem Brooks,                                Case No. 21-cv-1642 (MJD/TNL)

        Plaintiff,

v.                                                                      **ORDER**

John Doe, et al.,                                              **\*\*FILED UNDER SEAL\*\***

        Defendants.

Oliver E. Nelson, III, Magna Law Firm, 2915 Wayzata Boulevard, Minneapolis, MN 55403 (for Plaintiff); and

Sharda R. Enslin, Heather Passe Robertson, and Kristin R. Sarff, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, MN 55415 (for Defendant City of Minneapolis).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff Darius Hakeem Brooks' Motion to Modify Scheduling Order. Mot., ECF No. 24. A hearing on the motion was held on October 7, 2022. ECF No. 40. Attorney Oliver E. Nelson, III appeared on behalf of Plaintiff. Attorneys Sharda R. Enslin, Heather Passe Robertson, and Kristin R. Sarff appeared on behalf of Defendant City of Minneapolis. The motion was taken under advisement.

## II. BACKGROUND

On July 16, 2021, Plaintiff filed a Complaint alleging "that an unidentified Minneapolis Police ["MPD"] Officer violated Plaintiff's First and Fourteenth Amendment

1

rights by firing a less lethal projectile that struck him in the hand on May 28, 2020, while he was at a protest in downtown Minneapolis during a week of historic unrest following the death of George Floyd." Def.'s Mem. in Opp. at 2, ECF No. 32 (citing Compl. ¶¶ 14-28, 108-22, ECF No. 1). Plaintiff brings claims against Defendants John Doe 1 (the unidentified MPD officer that shot Plaintiff), John Does 2 through 6 (other unidentified MPD officers), John Does 7 and 8 (unidentified supervisory MPD officers), and the City of Minneapolis ("the City"), alleging that he "sustained serious injuries as a result of the unreasonable use of deadly force . . . by Defendants." Compl. ¶¶ 1-2.

On October 20, 2021, the Court[1] issued a Pretrial Scheduling Order. *See* ECF No. 10. The Court set the deadlines to seek to add parties as April 15, 2022, and to amend the pleadings as June 15, 2022. *See id.* at 3. Throughout the course of discovery, the City produced "over a thousand pages of police reports and several hundred hours of officer body cam footage." Pl.'s Mem. in Supp. at 2, ECF No. 25.

On April 20, 2022, the parties filed a Joint Stipulation to Amend Pretrial Scheduling Order, requesting a two-month extension of the deadline to add parties and a one-month extension of the deadline to amend the pleadings. *See* ECF No. 18 at 1. According to Plaintiff, he had "spent hundreds of hours reviewing the body cam video footage produced by the City to try to identify [Plaintiff] and the [John Doe 1] Officer who shot him in the footage," but was unable to do so. Pl.'s Mem. in Supp. at 5. "For this reason, [the parties] jointly stipulated to extend the deadlines" to add parties and amend the pleadings. *Id.* On

---

[1] Then-Magistrate Judge Katherine M. Menendez issued the first Pretrial Scheduling Order in this case. Judge Menendez was later elevated to District Judge, and this case was reassigned to the undersigned magistrate judge on December 27, 2021. *See* ECF No. 12.

April 27, 2022, in accordance with the parties' request, the Court issued an Amended Pretrial Scheduling Order, setting the deadlines to seek to add parties as June 15, 2022, and to amend the pleadings as July 15, 2022. *See* ECF No. 20 at 3.

According to Plaintiff, "on July 12, 2022, for the first time, [he] was able to locate and touch base with [a witness] who claimed [to] have witnessed [Plaintiff] being shot." Pl.'s Mem. in Supp. at 5. Plaintiff informed the City that he had identified the body worn camera footage that showed the incident that is the subject of the Complaint, and Plaintiff asked if the City would stipulate to another extension of the deadlines in the Amended Pretrial Scheduling Order. Def.'s Mem. in Opp. at 5; *see also* Ex. C to Nelson Decl. at 2, ECF No. 26-3.

On July 14, 2022, the parties filed another Joint Stipulation to Amend Pretrial Scheduling Order. *See* ECF No. 21. Among other deadlines, the parties requested a three-month extension of the deadline to seek to add parties and a two-month extension of the deadline to seek to amend the pleadings, both to September 15, 2022. *See id*. at 1. The parties noted that "[j]ust this past week, and for the first time, Plaintiff learned of a witness who claims to have witnessed Plaintiff being shot, and who Plaintiff believes can be seen in the body cam footage." *Id*. at 2. The parties agreed that "more time is needed to interview and potentially depose this witness, so that if need be, Plaintiff can make necessary amendments to his Complaint." *Id*. at 2. On July 18, 2022, the Court issued a Second Amended Pretrial Scheduling Order. *See* ECF No. 23 ("the Pretrial Scheduling Order"). The Court set the deadline to seek to add parties and amend the pleadings as September 15, 2022. *Id*. at 3.

According to Plaintiff, on July 19, 2022, the witness that Plaintiff located a week earlier "confirmed that he witnessed [Plaintiff] being shot at approximately 10:00 p.m. on May 28, 2020." Pl.'s Mem. in Supp. at 6; *see also* Ex. D to Nelson Decl. at 2, ECF No. 26-4. The witness provided a written statement:

> My name is [witness]. On 5/28/2020, I was protesting the killing of George Floyd in Minneapolis, Minnesota. While protesting downtown, I witnessed a Minneapolis police officer fire a rubber bullet that hit my acquaintance, [Plaintiff]. He was hit in his hand.
>
> After tending to [Plaintiff] for a few moments, I came back to tell the officers: 'You're aiming and shooting at civilians!' This incident happened at approximately 10:00 PM (or a few minutes later).

Ex. D to Nelson Decl. at 2.

On July 26, 2022, Plaintiff's counsel emailed the City's counsel a copy of the witness's written statement. Pl.'s Mem. in Supp. at 6; *see also* Ex. E to Nelson Decl. at 2, ECF No. 26-5. In his email, Plaintiff's counsel stated that the witness "observed [Plaintiff] being shot by Minneapolis police officer Ryan Atkinson." Ex. E to Nelson Decl. at 2. Plaintiff's counsel noted that while Plaintiff "cannot be clearly seen in" Officer Atkinson's body worn camera video, it shows that the shooting took place at the 22:12.13 mark of the video and "shows Officer Atkinson firing the shot that hit [Plaintiff]." *Id*. Plaintiff's counsel stated that he would "like to depose Officer Atkinson sometime in mid to late August." *Id*.

On August 3, 2022, after failing to receive a response from the City about scheduling Officer Atkinson's deposition, Plaintiff's counsel sent another email to the City's counsel.

4

Pl.'s Mem. in Supp. at 6-7.  The City responded that it "would need to double check with Officer Atkinson's schedule, but asked if [Plaintiff's] counsel would be available for depositions on either August 23, 25, or 26." *Id*. at 7.  On August 5, 2022, Plaintiff's counsel responded that he was unavailable on those dates but would be available the following week.  *Id*.  The parties then "agreed to move forward with Officer Atkinson's deposition on September 2, 2022." *Id*.

On August 26, 2022, Plaintiff's counsel emailed the City's counsel that "something unexpected ha[d] come up," and that he would need to reschedule Officer Atkinson's September 2, 2022, deposition.  *Id*.; *see also* Ex. H to Nelson Decl. at 2, ECF No. 26-8.  Plaintiff's counsel asked the City's counsel if she "and Officer Atkinson ha[d] any availability the second or third week in September."  Ex. H to Nelson Decl. at 2.  At the motion hearing, Plaintiff's counsel stated that his unavailability on September 2 was the result of "a family obligation that had arisen that was personal in nature."  Tr. 9:11-16, ECF No. 41.[2]  The Court then excused the City's counsel and sealed the record to get more information about the nature of Plaintiff's counsel's family obligation.  *See* ECF No. 42.  After the record was unsealed, the Court, with Plaintiff's counsel's permission, shared that his family obligation was to drive from the Twin Cities to elsewhere for something personal in nature, and he did not have to drive that person to that place.  Tr. 12:3-15.

On August 26, 2022, the parties agreed to reschedule Officer Atkinson's deposition to September 20, 2022.  Pl.'s Mem. in Supp. at 7.

---

[2] Although the transcript has been temporarily sealed to allow for the process of redacting any personal identifiers, *see generally* D. Minn. LR 5.5, any notice of intent to request redaction was due October 18, 2022, and no such notice was filed.  *See* ECF No. 41.

On September 16, 2022, one day after the September 15 deadline to seek to add parties and amend the pleadings, "Plaintiff's counsel contacted the City and asked if the City would stipulate to a third extension of the deadline for motion[s] to [seek] leave to add parties so that Plaintiff could join Officer Atkinson as a defendant." Def.'s Mem. in Opp. at 6. Plaintiff noted that he contacted the City as part of the meet-and-confer requirement, knowing that Plaintiff was going to have to bring a motion to modify the Pretrial Scheduling Order. *See* Tr. 14:23-15:2. According to the City, it declined to stipulate to an extension "[b]ecause the deadline had already passed and there was no good cause or extraordinary circumstances." Def.'s Mem. in Opp. at 6.

On September 20, 2022, Plaintiff took Officer Atkinson's deposition. Pl.'s Mem. in Supp. at 7. According to Plaintiff, during his deposition, among other things:

> Officer Atkinson confirmed that his body cam footage showed him firing his 40 mm launcher at the 22:12:13-14 mark in the video at a protestor who had thrown an object at him at the 22:11:12 mark in the video. [Officer] Atkinson testified that another officer had located this protestor and pointed him out to Officer Atkinson right before Officer Atkinson said[,] 'I see him,' and then shot at this protestor. Officer Atkinson also testified that he believed the protestor he shot at was more than 50 feet away, and that he could not remember any other details about the person he shot other than he was a male. In addition, Officer Atkinson testified that at the 22:18:14 mark of the video, although he appears to have fired his launcher at another protestor [in] light of the loud firing shot that's heard, and because of his statement, 'It got him,' he testified that it was not him but an officer next to him that had fired this 40 mm launcher.

*Id*. at 7-8 (citations omitted).

On September 22, 2022, seven days after the September 15 deadline to seek to add

parties and amend the pleadings, and two days after Officer Atkinson's deposition, Plaintiff filed the instant Motion to Modify Scheduling Order. *See* Mot. In his memorandum, Plaintiff argues that "[t]he lone modification [he] seeks is for this Court to extend the deadline for [him] to amend his complaint to name Officer Ryan Atkinson ("Officer Atkinson") as a defendant in this case to October 15, 2022." Pl.'s Mem. in Supp. at 1. Plaintiff contends there is good cause to amend the Pretrial Scheduling Order because his request to add Officer Atkinson as a defendant "is primarily based on evidence that [Plaintiff] discovered a little over two months ago," and Plaintiff's counsel "wanted to depose Officer Atkinson before formally seeking to add him as a defendant, to confirm that he was in fact the person in the body cam footage that fired that shot that struck [Plaintiff] in the right hand." *Id*. at 1, 6.

In his reply memorandum,[3] Plaintiff noted for the first time that he also "request[s] leave to assert a claim of negligence against Officer Atkinson." Pl.'s Reply Mem. at 2, ECF No. 38. Plaintiff's reply memorandum did not contain any additional information about this request. *See id*. At the hearing, Plaintiff stated that it "was an oversight on [Plaintiff's] part" to fail to include the request for leave to assert a claim of negligence in his motion and memorandum. Tr. 4:22-23. Plaintiff contended that "[t]he memorandum should have included a statement . . . indicating that [Plaintiff] not only seek[s] to add Officer Atkinson as a defendant to the lawsuit, replacing John Doe [1], but also to assert a claim of negligence against him based on the evidence . . . [Plaintiff] w[as] able to discover

---

[3] On October 3, 2022, Plaintiff requested permission to file a two-page reply brief with attachments in response to the City's memorandum. *See* ECF No. 36. The Court granted the request in part, allowing Plaintiff to file a two-page reply brief, but did not permit Plaintiff to file additional attachments. *See* ECF No. 37.

or unearth during his deposition testimony." Tr. 4:23-5:4.

The City opposes Plaintiff's motion. The City argues that "it is undisputed that Plaintiff identified Officer Atkinson as an intended defendant on July 26, 2022, *seven weeks* prior to the deadline to bring a motion to add parties. Plaintiff could have sought leave to amend the Complaint at that time but chose not to do so." Def.'s Mem. in Opp. at 2 (emphasis in original). The City argues that Plaintiff has not shown the requisite good cause and extraordinary circumstances required to extend the deadlines in the Pretrial Scheduling Order, and the Court should therefore deny the motion. *Id*. at 6.

### III. LEGAL STANDARD

Rule 16 of the Federal Rules of Civil Procedure provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006); *see also* D. Minn. LR 16.3(b)(1) (requiring a party moving to modify a scheduling order to "establish good cause for the proposed modification"). The good cause showing "falls within the magistrate judge's broad discretion." *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019). "The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements. . . . [The court] focus[es] in the first instance (and usually solely) on the diligence of the party who sought modification of the order." *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (quotation omitted); *accord Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the

8

extension." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 581-82 (D. Minn. 1999) (quotation omitted); *see also* Fed. R. Civ. P. 16(b), advisory committee note ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

"[W]hile diligence is the primary factor for assessing good cause, nothing limits the Court's 'broad discretion in establishing and enforcing the deadlines' in the scheduling order." *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug, 4, 2017) (quoting *Marmo*, 457 F.3d at 759)). Courts may also consider, for example, whether there has been a "change in the law, [ ] newly discovered facts, or any other changed circumstance" that constitutes good cause to modify a scheduling order. *See Sherman*, 532 F.3d at 718; *see also Ellingsworth v. Vermeer Manuf. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [a court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)); *see also Archer*, 187 F.R.D. at 582 ("Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party.").

The "exacting" standard set by Rule 16(b) requires that the moving party first make the requisite good cause showing. *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009). Because scheduling orders are "a vehicle designed to streamline the flow of litigation through [the Court's] crowded docket," the Court does not take such orders lightly and "will enforce them." *Id.* "In sum, Rule 16(b) assures that a magistrate judge's

scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Archer*, 187 F.R.D. at 582 (citation and internal quotations omitted).

Further, when a deadline in a scheduling order has passed, "in addition to demonstrating good cause under Rule 16, the movant must also demonstrate 'extraordinary circumstances' that would warrant extending a scheduling order deadline . . . ." *Zarling v. Abbott Laboratories*, No. 21-cv-23 (MJD/JFD), 2022 WL 1598232, at *3 (D. Minn. May 20, 2022) (citing *See Frazier v. Bickford*, No. 14-cv-3843 (WMW/TNL), 2016 WL 10952821, at *3 (D. Minn. Mar. 31, 2016)). Under this District Court's Local Rules, "[e]xcept in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order." D. Minn. LR 16.3(d); *see also Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2013 WL 12141434, at *2 (D. Minn. May 15, 2013) ("Plaintiffs seek to amend the pretrial scheduling order after the deadline to seek such amendments has passed. Because the deadline has passed, Plaintiffs must show 'good cause' and extraordinary circumstances that justify the proposed modifications."); *Coleman v. Minneapolis Pub. Sch.*, No. 18-cv-2283 (DSD/ECW), 2020 WL 6042394, at *4-5 (D. Minn. Oct. 13, 2020) (same). "Extraordinary circumstances are circumstances outside of the moving party's control." *Khoday*, 2013 WL 12141434, at *2 (citing *Shukh v. Seagate Tech., LLC*, No. 10-cv-404, 2013 WL 53835, at *3-4 (D. Minn. Jan. 3, 2013)). Where a motion to amend a pretrial scheduling order "wholly fails to even discuss much less demonstrate the requisite 'extraordinary circumstances' necessary" to amend a pretrial scheduling order, there is "a

10

sufficient basis to deny [the motion]." *Heiderscheid v. Dakota Cty. Sheriff Off.*, No. 18-cv-1180 (JNE/LIB), 2020 WL 5128147, at *5 (D. Minn. July 22, 2020).

## IV. DISCUSSION

The deadline to file motions seeking to add parties or amend the pleadings was September 15, 2022. *See* Pretrial Sched. Order at 3. Plaintiff filed his motion to "extend the deadline for [Plaintiff] to amend his complaint to name [Officer Atkinson] as a defendant in this case" on September 22, 2022, seven days after the deadline to seek to add parties. *See* Pl.'s Mem. in Supp. at 1. Plaintiff later sought leave "to assert a claim of negligence against Officer Atkinson," in other words, to extend the Pretrial Scheduling Order deadline for Plaintiff to amend the pleadings,[4] on October 4, 2022, almost three weeks after the deadline to seek to amend the pleadings. Therefore, as Plaintiff concedes, his motion is untimely. *See* Tr. 6:2. Accordingly, Plaintiff must demonstrate not only good cause to modify the deadline, but also extraordinary circumstances that warrant an extension. *See Frazier*, 2016 WL 10952821, at *3.

### A. Good Cause

Plaintiff argues that there is good cause to amend the Pretrial Scheduling Order to allow him to add Officer Atkinson as a party and assert a negligence claim against him because (1) he exercised diligence in attempting to meet the Pretrial Scheduling Order

---

[4] Federal Rule of Civil Procedure Rule 15 governs amending pleadings. Rule 15 requires the Court to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The parties, however, "do not have an absolute right to amend for any claim at any time." *Shank*, 329 F.R.D. at 613 (citing *Sherman*, 532 F.3d at 715). "[W]hen a Rule 15 motion is brought after the court-ordered deadline, the [C]ourt must conduct a 'good cause' analysis under Rule 16 to determine if amendment of the scheduling order is appropriate." *Id.* (citing *Sherman*, 532 F.3d at 716; *TCS Holdings, Inc. v. OnVoy, Inc.*, No. 07-cv-1200 (DWF/AJB), 2008 WL 11347408, at *2 (D. Minn. May 16, 2008)).

deadlines, and (2) even absent diligence, the Court can still find good cause under other factors. For the reasons set forth below, the Court finds that Plaintiff has not demonstrated good cause to modify the deadlines in the Pretrial Scheduling Order. Accordingly, Plaintiff's motion to modify the scheduling order is denied. *See id*. ("When a party fails to meet a deadline and fails to show good cause for its untimeliness, court enforcement of the deadline is the proper course of action.").

### 1. Diligence

Plaintiff first argues that he demonstrated diligence in attempting to meet the Pretrial Scheduling Order's September 15 deadline to seek to add parties and amend the pleadings. Plaintiff contends that he has "been diligent in trying to identify the officer that shot [Plaintiff] and also to narrow the focus in terms of the meritorious claims that could be brought against Officer Atkinson based on the evidence that's been discovered, essentially since Officer Atkinson's deposition on September the 20th." Tr. 5:20-6:1; *see also* Pl.'s Mem. in Supp. at 12. Specifically, he argues that because Plaintiff was not seen clearly in the video footage, "[t]o establish a good faith basis for [Plaintiff's] excessive force claim against Officer Atkinson, [Plaintiff's] counsel felt it necessary to first depose Officer Atkinson before seeking leave to amend." Pl.'s Mem. in Supp. at 12-13; *see also* Nelson Decl. at ¶ 11, ECF No. 26 ("I desired to depose Officer Atkinson before formally seeking to add him as a Defendant in this lawsuit to confirm that he was in fact the person in the body cam footage that fired the shot that struck Plaintiff in the right hand."). According to Plaintiff, he "did not have a good faith basis to assert a claim against Officer Atkinson until his deposition on September 20, 2022," when Officer Atkinson confirmed that he

fired the shot that Plaintiff believes hit him. Tr. 6:3-6, 6:24-7:19. Plaintiff further contends that he was diligent in trying to schedule Officer Atkinson's deposition before the September 15 deadline. Pl.'s Mem. in Supp. at 12; Tr. 16:20-21. The City responds that Plaintiff had the information he needed to amend his Complaint on July 26, 2022, when he obtained a statement from the witness, and Plaintiff cannot meet the good cause standard when some of the relevant information on which he bases his amendments on were available to him seven weeks prior. Def.'s Mem. in Supp. at 9-10.

The Court agrees with the City and finds that Plaintiff was not diligent in seeking to add Officer Atkinson as a party or assert a negligence claim against him. When a plaintiff has "possession of some of the evidence on which they base their" proposed amendments before the deadline to make those amendments, the plaintiff does not show good cause to amend the pretrial scheduling order. *See Khoday*, 2013 WL 12141434, at *2; *see also Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, No. 09-cv-1091 (JNE/JSM), 2010 WL 4193076, at *6 (D. Minn. Oct. 7, 2010) ("[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation."). Here, while Plaintiff contends that "there w[ere] still too many uncertainties and unknowns" to make the amendments to his Complaint before Officer Atkinson's deposition, *see* Tr. 6:13-22, by his own admissions, he had the information he needed to seek to amend his Complaint in July. Specifically, on July 26, 2022, Plaintiff's counsel emailed the City's counsel a copy of the witness's written statement and stated that the witness "observed [Plaintiff] being shot *by Minneapolis police officer Ryan Atkinson*," and that video 6960, which the City had identified in discovery as

13

Officer Atkinson's body worn camera video, "*shows Officer Atkinson firing the shot that hit [Plaintiff]*." Ex. E to Nelson Decl. at 2 (emphasis added); *see also* Ex. A to Enslin Decl. at 2, ECF No. 34. Thus, as far back as July, Plaintiff had identified Officer Atkinson as the person who shot him and located evidence to support that. In fact, when confronted with this at the hearing, Plaintiff's counsel acknowledged that he "certainly could have brought the motion" in July, August, or September before the deadline. *See* Tr. 6:13-22. He also stated that "based on the evidence that [Plaintiff] had, [he] perhaps had a good faith basis" to move to amend his Complaint at that point. *See* Tr. 15:19-23. With the witness's statement and Officer Atkinson's body worn camera video, Plaintiff undoubtedly had "possession of some of the evidence" on which he bases his request to add Officer Atkinson and assert a negligence claim against him before the September 15 deadline to do so. *See Khoday*, 2013 WL 12141434, at *2. Plaintiff therefore could have moved to add Officer Atkinson as a party and assert a negligence claim against him as early as July, and he cannot demonstrate that the September 15 deadline could not have "reasonably be[en] met despite the diligence" of Plaintiff. *See Archer*, 187 F.R.D. at 581.

Moreover, Plaintiff failed to raise his request for leave to assert a negligence claim against Officer Atkinson in his motion and supporting memorandum and only raised the issue in one sentence in his reply memorandum. *See generally* Pl.'s Mem. in Supp; *see also* Pl.'s Reply Mem. at 2. At the hearing, Plaintiff stated that it "was an oversight on [his] part" to fail to include the request for leave to assert a claim of negligence in his motion and memorandum. Tr. 4:22-23. Plaintiff contended that "[t]he memorandum should have included a statement . . . indicating that [Plaintiff] not only seek[s] to add

14

Officer Atkinson as a defendant to the lawsuit, replacing John Doe [1], but also to assert a claim of negligence against him based on the evidence . . . [Plaintiff] w[as] able to discover or unearth during his deposition testimony." Tr. 4:23-5:4. "It hardly bears mentioning . . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant for relief." *Hibbing*, 266 F.R.D. at 265 (citation and quotations omitted); *see also C.H. Robinson Co. v. Zurich Am. Ins. Co.*, No. 02-cv-4794 (PAM/RLE), 2004 WL 1765320, at *1 (D. Minn. Aug. 5, 2004) (quoting *N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1144 (D. Minn. 2003)) ("Carelessness does not excuse dilatoriness and 'offers no reason for a grant of relief.'"). Plaintiff's "oversight" with respect to his request to amend the Pretrial Scheduling Order to extend the deadline to amend the pleadings amounts to carelessness and demonstrates that Plaintiff was not diligent in attempting to meet the deadline.

Plaintiff's argument that he did not have a good faith basis to add Officer Atkinson as a defendant or assert a negligence claim against him until Officer Atkinson's deposition on September 20, 2022, is unpersuasive. The same argument was rejected in *Aviva*, 2010 WL 4193076, at *7. In *Aviva*, the plaintiff moved to amend the complaint to add a claim after the deadline to do so. *Id*. The plaintiff argued that it could not have brought the motion earlier because it did not have a valid basis to assert the claim until after taking depositions. *Id*. The court concluded that the plaintiff's rationale for waiting to add the claim was "unsupported by the record" because the plaintiff "knew virtually the same facts it learned at these depositions" earlier in the litigation. *Id*. The court further noted that "nothing prevented [the plaintiff] from alleging its [new] claim" earlier in the litigation, as

the proposed amended complaint "d[id] not propose to add any new factual support pertaining to defendants' alleged malfeasance." *Id*. Accordingly, the court found that the plaintiff "failed to diligently pursue the addition of the [ ] claim" and denied the motion. *Id*.

Here, as in *Aviva*, despite Plaintiff's claim that he did not have a "good faith basis" to add Officer Atkinson as a defendant and assert a negligence claim against him, Plaintiff "knew virtually the same facts [he] learned at [Officer Atkinson's September 20] deposition[ ]" in July, and nothing prevented him from adding Officer Atkinson and alleging a negligence claim against him before the September 15 deadline to do so. *See id*. As stated above, on July 26, 2022, Plaintiff's counsel informed the City's counsel that he had spoken with a witness who "observed [Plaintiff] being shot *by Minneapolis police officer Ryan Atkinson*," and that Officer Atkinson's body worn camera video "*shows Officer Atkinson firing the shot that hit [Plaintiff]*." Ex. E to Nelson Decl. at 2 (emphasis added). In moving to modify the scheduling order to add Officer Atkinson as a party and assert a negligence claim against him, Plaintiff does not rely on any additional facts he learned at Officer Atkinson's deposition. This is evidenced by the fact that the redline version of Plaintiff's proposed amended complaint shows that Plaintiff only replaces the name "John Doe 1" with "Officer Atkinson." *See generally* Ex. L to Nelson Decl., ECF No. 26-11. Plaintiff does not assert any new factual allegations, for example, that Officer Atkinson admitted to or confirmed that he was the officer who shot Plaintiff. The proposed amended complaint only includes facts that Plaintiff knew before the September 20 deposition. While Officer Atkinson's deposition testimony may have strengthened

Plaintiff's belief that Officer Atkinson was the proper "John Doe 1" defendant and that a negligence claim against him would ultimately succeed, Plaintiff possessed the relevant information needed to amend his Complaint several months earlier in the litigation. *See Aviva*, 2010 WL 4193076, at *6; *see also Solutran, Inc. v. U.S. Bancorp and Elavon, Inc.*, No. 13-cv-2637 (SRN/BRT), 2017 WL 89558, at *4 (D. Minn. Jan 10, 2017) (affirming the magistrate judge's finding "that the new information cited by [the plaintiff] was not so materially different from the information previously in [the plaintiff's] possession so as to justify a delay in moving either to amend or to extend the deadline to amend"); *Johnson v. Franchoice, Inc.*, No. 19-cv-1417 (MJD/ECW), 2020 WL 6938782, at *10 (D. Minn. Nov. 25, 2020) ("[W]hile some evidence may have been available after the . . . cut-off for motions to amend, the key evidence on which Plaintiffs rely was available months before the motion to amend deadline expired.").

Further, contrary to his assertions, it was not "necessary" for Plaintiff to get Officer Atkinson's deposition testimony to "confirm that he was in fact the person in the body cam footage that fired the shot that struck Plaintiff" before seeking leave to amend his Complaint. *See* Pl.'s Mem. in Supp. at 12-13; Nelson Decl. at ¶ 11; Tr. 6:3-6, 6:24-7:19, 33:20-34:5. Plaintiff "ignores the flexibility provided by Rule 11(b)(3), allowing pleadings based on evidence reasonably anticipated after further investigation or discovery." *See Rotella v. Wood*, 528 U.S. 549, 560 (2000); *see also* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so

identified, *will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .*") (emphasis added).  Again, even if Plaintiff's counsel believed that Officer Atkinson's deposition testimony would support Plaintiff's proposed amendments, the information Plaintiff had in July, including the witness's statement and Officer Atkinson's body worn camera video, contained the sufficient facts necessary to bring a reasonable attorney past the relative threshold of an objective, good faith belief that the proposed amendments had merit.  *See Solutran*, 2017 WL 89558, at *4 ("[W]hether or not the evidence in [the plaintiff's] possession . . . was insufficient, by itself, to support amendment of the Complaint, it was certainly sufficient to put [the plaintiff] on notice that further discovery might lead to such evidence.").  Moreover, the Court questions Plaintiff's argument that he "didn't want to be in a position where [he was] wasting precious judicial resources and litigating potentially a non-meritorious lawsuit by naming a person who ultimately testifies that he didn't fire the shot."  *See* Tr. 35:11-16.  First, it is common for party depositions to take place after a defendant is named in a lawsuit.  It is certainly not required for a defendant to testify that they are the correct defendant before that person can be added to the lawsuit.  Additionally, given all the information Plaintiff already had, the Court finds it unlikely that Plaintiff would not have named Officer Atkinson as the John Doe 1 Defendant even if Officer Atkinson had testified that he was not the person who fired the shot.  As the Court pointed out at the hearing, Plaintiff's claims against Officer Atkinson arguably would have been stronger *before* Officer Atkinson's deposition, where he would have had the opportunity to deny that he was the shooter.  Consequently, the Court cannot find good cause based on any asserted need to take Officer Atkinson's

deposition before bringing his motion.

Lastly, even if Plaintiff believed it was necessary to get Officer Atkinson's deposition testimony before moving to amend his Complaint, he failed to act diligently in seeking an extension of the Pretrial Scheduling Order deadline. While Plaintiff had originally scheduled Officer Atkinson's deposition for September 2, 2022, Plaintiff decided on August 26 to move the deposition to September 20, five days after the September 15 deadline. Thus, Plaintiff had three weeks between the date he moved the deposition and the deadline to move the Court for an extension of the deadline and failed to do so. He offered the Court no explanation for his failure to make such a request. Instead, when asked at the hearing why he did not bring a motion to modify the Pretrial Scheduling Order deadlines after he knew he wouldn't be able to hold the deposition before September 15, Plaintiff's counsel admitted that was "a fair point," and that "based on the evidence that [Plaintiff] had, [he] perhaps had a good faith basis to . . . bring a motion before the Court to extend the deadline even before the deposition occurred." Tr. 15:3-16:6, 17:11-21. Plaintiff offers, and the Court finds, no reason why Plaintiff could not have brought his motion to modify the Pretrial Scheduling Order before the September 15 deadline. The Court agrees with the City that "[i]f Plaintiff *truly* believed that he was unable to amend his pleadings without first taking Officer Atkinson's deposition, it was at that point, after the cancellation of the deposition and before the expiration of the deadline, that he should have sought an amendment to the Scheduling Order." Def.'s Mem. in Opp. at 13 (emphasis in original). Further, at the hearing, Plaintiff acknowledged knowing that he would have to bring a motion to modify the Pretrial Scheduling Order but waiting until after the

September 15 deadline to meet-and-confer with the City about such a request. *See* Tr.
14:23-15:2. The Court therefore "cannot find that [Plaintiff] acted with diligence where
he knowingly allowed a deadline to pass, rather than seeking its extension, when he
believed that he might still file such a motion." *See Zarling*, 2022 WL 1598232, at *4
(citing *Solutran*, 2017 WL 89558, at *4) ("The record . . . shows that as far back as
February, [plaintiff] had the information necessary to—if not move to amend—at least
move to modify the scheduling order. Nothing about the evidence uncovered
[subsequently] serves to alter the fact that [plaintiff] chose not to do so.").

Moreover, Plaintiff's counsel's explanation for needing to move the deposition to
after the September 15 deadline does not constitute good cause for an extension. Plaintiff's
counsel explained that "something unexpected ha[d] come up" and he had "a family
obligation . . . that was personal in nature." Pl.'s Mem. in Supp. at 7; Tr. 9:11-16. At the
hearing, the Court excused the City's counsel and sealed the record to give Plaintiff's
counsel an opportunity to provide more information about the nature of his unexpected
family obligation. *See* ECF No. 42. Plaintiff provided very little detail about the
obligation, and it was later placed on the record that the family obligation was to drive from
the Twin Cities to elsewhere for something personal in nature, and that Plaintiff's counsel
did not have to drive that person to that place. Tr. 12:3-15. This certainly does not
constitute a circumstance beyond Plaintiff's control. In the absence of a more specific and
compelling explanation from Plaintiff's counsel about why the family obligation made it
absolutely necessary to reschedule Officer Atkinson's deposition to after the September 15
deadline or why it made it impossible for Plaintiff's counsel to move the Court to modify

the deadline, the Court cannot find that Plaintiff's purported unavailability for the September 2 deposition constitutes good cause for an extension.

In sum, considering all of the circumstances in this case, the Court finds that Plaintiff did not act diligently in attempting to meet the Pretrial Scheduling Order's deadline to seek to add parties or amend the pleadings. Plaintiff had at least some of the evidence on which he bases his request to add Officer Atkinson as a party back in July. And, he delayed even further his request for leave to assert a negligence claim against Officer Atkinson. Plaintiff has not demonstrated that the September 15 deadline could not reasonably have been met despite his diligence and has not shown the good cause necessary to extend the deadline. *See Harris*, 760 F.3d at 786 ("The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements. . . . [The court] focus[es] in the first instance (and usually solely) on the diligence of the party who sought modification of the order.").

### 2. Other Factors

In the alternative, Plaintiff argues that even if the Court finds that he did not act with diligence, the Court should modify the deadlines in the Pretrial Scheduling Order because other factors support a finding of good cause. Pl.'s Mem. in Supp. at 11, 13. Plaintiff cites *Portz*, 2017 WL 3332220, at *3, which held that "Eighth Circuit caselaw reflects the importance of diligence to the good cause analysis, but this caselaw does not go so far as to state that diligence is required for the district court to find good cause." *See* Pl.'s Mem. in Supp. at 11; Tr. 16:7-17:7. The court in *Portz* noted that "while diligence is the primary factor for assessing good cause, nothing limits the Court's 'broad discretion in establishing

21

and enforcing deadlines' in the scheduling order." *Portz*, 2017 WL 3332220, at *3 (quoting *Marmo*, 457 F.3d at 759). The Court can "consider the existence or degree of prejudice to the party opposing the modification." *Id*. (quoting *White v. Nat'l Football League*, 756 F.3d 585, 596 (8th Cir. 2014)). Other courts recognize additional factors in assessing good cause, including the explanation for the failure to timely move for leave to amend, the importance of the amendment, potential prejudice in allowing the amendment, and the availability of a continuance to cure such prejudice. *Id*. (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)). Plaintiff argues that the Court should permit the proposed amendments even absent a finding of diligence because (1) they are based on "newly discovered evidence," (2) they are important amendments, and (3) the City would not be prejudiced by the amendments. Pl.'s Mem. in Supp. at 13-15.

Plaintiff's argument that the Court should find good cause absent a finding of diligence fails. *Portz* does not "stand[ ] for the proposition that it is contrary to law to not consider other relevant factors beyond diligence." *Taqueria El Primo LLC v. Illinois Farmers Ins. Co.*, No. 19-cv-3071 (JRT/BRT), 2022 WL 14004844, at *4 (D. Minn. Oct. 24, 2022). In fact, the *Portz* court found that the plaintiffs in that case *did* show sufficient diligence. *See Portz*, 2017 WL 3332220, at *4. *Portz* "indicates only that a court is 'permitted' to consider a broader range of factors." *Taqueria*, 2022 WL 14004844, at *4. While "courts are permitted to consider a broader range [of factors], 'ordinarily, the Court will not consider other factors unless diligence has been established.'" *Id*. (quoting *Dioceses of St. Cloud v. Arrowood Indemnity Co.*, No. 17-cv-2002 (JRT/LIB), 2019 WL 79003, at *3 (D. Minn. Jan. 2, 2019)). As discussed above, the Court finds that Plaintiff

did not act diligently in attempting to meet the Pretrial Scheduling Order's deadline to seek to add parties or amend the pleadings. Thus, the Court need not consider any other factors. *See id*.

Still, even if the Court were to consider the additional factors Plaintiff discusses, they do not support a finding that there is good cause to amend the deadline. First, relying on *Portz*, Plaintiff claims that his request to add Officer Atkinson as a party and assert a negligence claim against him is based on "newly discovered evidence." *See* Pl.'s Mem. in Supp. at 13; Tr. 16:7-17:7. The *Portz* court found good cause to amend the pretrial scheduling order in part because the plaintiffs in that case made "a significant argument that they did not have a reasonable basis to bring the new claims until after the scheduling deadline." *Portz*, 2017 WL 3332220, at *4. Here, in contrast, as discussed at length above, Plaintiff had all the information he used in his proposed amendment complaint in July, and certainly had a reasonable basis to add Officer Atkinson as a party and assert a negligence claim against him before the deadline.

Moreover, the *Portz* court emphasized the fact that the defendants' "delay in production, in the face of repeated attempts to procure discovered by [the plaintiffs], likely prevented [the plaintiffs] from receiving what they viewed as necessary information to bring [the] additional claims." *Id*. Here, however, the City did not delay in producing discovery. The City produced all of the body worn camera videos, including Officer Atkinson's, on March 30 and 31, 2022, via a secure electronic link that expired after seven days. Def.'s Mem. in Opp. at 3. Plaintiff contends that he "encountered numerous problems trying to download the footage that the City produced," *see* Pl.'s Reply Mem. at

23

1, so the City sent Plaintiff new links to download the videos at his request on April 20 and

May 10. *See* Def.'s Mem. in Opp. at 4. When Plaintiff requested that the City send a new

link on June 2, the City mailed Plaintiff flash drives with all of the previously produced

video footage on June 3 "[i]n an effort to end the ongoing cycle of video reproduction."

*Id*. at 4-5. The Court does not find "that there were delays with respect to the City and with

respect to providing [Plaintiff] with information that would have made it easier for

[Plaintiff] to identify Officer Atkinson earlier." *See* Tr. 36:7-10. In fact, Plaintiff asserts

that his proposed amendments are based on information that he discovered during Officer

Atkinson's deposition, namely, that Officer Atkinson confirmed that he was the shooter,

not on information that the City failed to produce. *See Diocese of St. Cloud*, 2019 WL

79003, at *3 ("There is no justification for Plaintiffs' delay in this case. Plaintiffs' proposed

amendments are based on information that *they* discovered, not on information that

Defendants failed to produce.") (emphasis in original). Further, the City provided Officer

Atkinson's body worn camera video to Plaintiff on a flash drive on June 3, 2022. Def.'s

Mem. in Opp. at 5. Not only was this weeks *before* Plaintiff informed the City that he had

identified a witness who observed Plaintiff being shot by Officer Atkinson and that the

incident is captured in Officer Atkinson's body worn camera video, but also weeks before

the parties stipulated to extend the deadline to seek to add parties and amend the pleadings

to September 15. Thus, unlike *Portz*, there was no delay in the City producing discovery,

and any delay did not prevent Plaintiff from bringing a motion seeking leave to amend his

Complaint or at least seeking a modification of the September 15 deadline before that date.

Additionally, even assuming Plaintiff's proposed amendments are important to his

case and would not prejudice the City, these facts are not sufficient for the Court to find good cause to extend the September 15 deadline.  In the Court's "broad discretion," the Court does not find these considerations to overcome Plaintiff's failure to move to amend his Complaint or at least move to modify the scheduling order in advance of the applicable deadline.  *See Shank*, 329 F.R.D. at 614.  Scheduling orders are "a vehicle designed to streamline the flow of litigation through [the Court's] crowded docket," and the Court does not take such orders lightly and "will enforce them."  *Hibbing Taconite Co.*, 266 F.R.D. at 265.  Plaintiff cannot "cavalierly disregard[ ]" the deadline in the Court's Pretrial Scheduling Order and later seek to extend the deadline arguing that the amendment is important to his case and would not prejudice the other side.  *See Archer*, 187 F.R.D. at 582; *see also Frazier*, 2016 WL 10952821, at *3 ("The Court depends on the parties to abide by deadlines to ensure the orderly administration of its cases. This Court could not function if parties were allowed to dismiss scheduling deadlines as procedural technicalities.") (citations and quotations omitted).  Again, if Plaintiff truly believed that adding Officer Atkinson as a party and asserting a negligence claim against him were so important, he should have filed a motion for leave to amend the Complaint or a motion to modify the Pretrial Scheduling Order on or before September 15.  Plaintiff's failure to do so here cannot be excused.

### B.  Extraordinary Circumstances

Even assuming that Plaintiff would have demonstrated good cause to modify the Pretrial Scheduling Order, Plaintiff's motion fails because he has not demonstrated "extraordinary circumstances" that would warrant extending the deadline to seek to add a

party or amend the pleadings.  Again, when a deadline in a scheduling order has passed, "in addition to demonstrating good cause under Rule 16, the movant must also demonstrate 'extraordinary circumstances' that would warrant extending a scheduling order deadline." *Zarling*, 2022 WL 1598232, at *3 (citing *Frazier*, 2016 WL 10952821, at *3).  "Except in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order." D. Minn. LR 16.3(d).  "Extraordinary circumstances are circumstances outside of the moving party's control."  *Khoday*, 2013 WL 12141434, at *2 (citing *Shukh*, 2013 WL 53835, at *3-4 ).

Here, Plaintiff filed his motion seeking to extend the deadline to add a party on September 22, 2022, seven days after the deadline had passed.  He then waited until October 4, 2022, to request leave to add a claim of negligence against Officer Atkinson. Plaintiff provides no explanation for why he failed to bring his motion to modify the Pretrial Scheduling Order or obtain a hearing date on that motion before September 15. *See* Tr. 15:3-17:21.  At one point during oral arguments, Plaintiff's counsel stated that he had an unexpected family obligation come up, but then admitted he did not have to drive another person to a certain place.  Tr. 12:3-15.  Plaintiff "fails to even discuss much less demonstrate the requisite 'extraordinary circumstances' necessary for the current [Pretrial Scheduling Order] to be amended. This represents a sufficient basis to deny Plaintiff's Motion to Modify . . . Scheduling Order."  *See Heiderscheid*, 2020 WL 5128147, at *5. Plaintiff's justification, or lack thereof, for failing to bring a timely motion to modify the Pretrial Scheduling Order is certainly less persuasive than others that have been rejected

by courts in this district. *See, e.g., Coleman*, 2020 WL 6042394, at *4-5 (finding no extraordinary circumstances where the plaintiff argued that "the District delayed in producing documents; [counsel] had difficulties arising out of the COVID-19 pandemic, including because he was required to self-quarantine . . . ; [counsel] was in a car accident . . . ; and he misunderstood the scheduling order"). Accordingly, Plaintiff has not demonstrated the requisite extraordinary circumstances that would warrant the extension of the deadline in the Pretrial Scheduling Order that has passed.

The Court is aware that denial of Plaintiff's motion may well have significant adverse impact on his case. Given the facts before the Court and the law it must apply, however, granting Plaintiff's motion would indeed render scheduling orders a mere aspirational goal. This the Court cannot do in good jurisprudential conscience. In sum, the Court finds that no good cause or extraordinary circumstances have been shown by Plaintiff to justify his motion to modify the Pretrial Scheduling Order. Accordingly, Plaintiff's motion is denied.

## V. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Modify Scheduling Order, ECF No. 24, is **DENIED**.

2. The parties filed several documents in connection with Plaintiff's Motion to Modify Scheduling Order, ECF No. 24, under temporary seal. Pursuant to D. Minn. LR 5.6(d)(2), the parties must file a Joint Motion Regarding Continued Sealing according to the rule. The parties shall file that joint motion on or before **December 15, 2022**.

3. This Order has been filed under seal because certain documents referenced herein were filed under seal. This Order will be filed publicly on **December 30, 2022**, unless the parties show cause as to why the document should remain under seal, and if so, which portions of it should remain sealed.


Dated: December ___1___, 2022                         _____*s/ Tony N. Leung*_____
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota


                                                      *Brooks v. Doe et al.*
                                                      Case No. 21-cv-1642 (MJD/TNL)